Barbara A. MEYERS, Lynn Stucker, Loyal Berg
and Eugene Browning, individually and
on behalf of all others similarly situated,
Plaintiffs-Appellants,

v.

BAYER AG, Bayer Corporation, Barr Laboratories,
Inc., Rugby Group, Inc., Watson Pharmaceuticals,
Inc. and Hoeschst Marion Roussel, Inc.,
Defendants-Respondents.†

Court of Appeals

*No. 2003AP2840. Submitted on briefs April 4, 2006.
—Decided May 9, 2006.*

2006 WI App 102

(Also reported in 718 N.W.2d 251.)

† Petition to review granted 7-25-06.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John C. Cabaniss* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the defendants-respondents Bayer AG and Bayer Corporation, the cause was submitted on the joint brief of *Gerardo H. Gonzalez* and *Jeffrey Krill* of *Gonzalez, Saggio & Harlan, LLP*, Milwaukee; *Phillip A. Proger, Kevin D. McDonald, William V. O'Reilly* and *Lawrence D. Rosenberg* of *Jones Day*, Washington, D.C.; *Fred H. Bartlit, Jr., Peter B. Bensinger, Jr., Michael J. Valaik* and *Paul J. Skiermont* of *Bartlit Beck Herman Palenchar & Scott LLP*, Chicago, IL.

On behalf of the defendant-respondent Barr Laboratories, Inc., the cause was submitted on the joint brief of *William J. Mulligan* and *Kathy L. Nusslock of Davis & Kuelthau, S.C.*, Milwaukee and *Thomas D. Yannucci, P.C., Karen N. Walker* and *Edwin John U* of *Kirkland & Ellis LLP*, Washington, D.C.

On behalf of the defendants-respondents Aventis Pharmaceuticals Inc., The Rugby Group, Inc. and Watson Pharmaceuticals, Inc., the cause was submitted on the joint brief of *Stephen P. Hurley* and *Kristine A. Long* of *Hurley, Burish & Milliken, S.C.*, Madison and *David E. Everson, Heather S. Woodson* and *Victoria L. Smith* of *Stinson Morrison Hecker LLP*, Kansas City, MO.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Barbara A. Meyers, Lynn Stucker, Loyal Berg and Eugene Browning, representing a putative class of Wisconsin residents, (hereinafter "appellants") appeal from an order dismissing their

complaint against Bayer AG, Bayer Corporation, Barr Laboratories, Inc., Rugby Group, Inc., Watson Pharmaceuticals, Inc. and Hoeschst Marion Roussel, Inc. (hereinafter "Bayer"), which alleged that Bayer violated Wis. Stat. § 133.03 (2003–04)[1] antitrust laws by conspiring to inflate the cost of Cipro, a widely prescribed antibiotic. The trial court dismissed the complaint on the basis that Chapter 133 of the Wisconsin Statutes applies only to intrastate commerce. After the trial court's decision, our supreme court changed existing law, concluding that "Wisconsin's antitrust statutes may reach interstate commerce if . . . the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state . . . ." *Olstad v. Microsoft Corp.*, 2005 WI 121, ¶ 1, 284 Wis. 2d 224, 700 N.W.2d 139. Based on *Olstad*'s holdings, the trial court erred in dismissing the appellants' complaint at this stage in the case; we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. The genesis of this case arises from a 1997 settlement of a patent lawsuit between Bayer, which held the patent to the active ingredient of the antibiotic Cipro, and Barr Laboratories, which made and sought to market a generic version of Cipro before Bayer's patent expired. Appellants contend that the settlement agreement created an antitrust conspiracy between Bayer and Barr Laboratories, resulting in Wisconsin residents having to pay inflated prices for Cipro.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. Bayer owns the Cipro patent, issued on June 2, 1987, and which expired on June 9, 2004.[2] On December 6, 1991, Barr Laboratories gave notice, pursuant to the Hatch-Waxman Act, *see* 21 U.S.C. § 355, that it had filed an Abbreviated New Drug Application with the FDA seeking permission to market generic Cipro before Bayer's patent expired. Barr Laboratories contended that Bayer's patent was invalid and unenforceable. Under the Hatch-Waxman Act, Bayer then had forty-five days to sue Barr Laboratories for patent infringement. *See id.* § 355(j)(5)(B)(iii).

¶ 4. On January 16, 1992, Bayer sued Barr Laboratories in the southern district of New York, alleging that Barr's application infringed on its Cipro patent. The FDA stayed approval of Barr's application. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 518 (E.D.N.Y. 2005). Barr answered the complaint and asserted counterclaims based on invalidity and unenforceability of the patent. *Id.* Before the case went to trial, Bayer and Barr Laboratories entered into a settlement agreement. In the agreement, dated January 8, 1997, Barr Laboratories consented to judgment in Bayer's favor affirming the Cipro patent's validity. Barr Laboratories agreed not to market its generic Cipro until after Bayer's patent expired. In exchange, Bayer agreed to pay Barr Laboratories ongoing settlement payments, which ultimately totaled $398 million.[3]

---

[2] The patent would have expired on December 9, 2003, but the Food and Drug Administration granted a six-month pediatric exclusivity extension to Bayer.

[3] At the time the patent case was settled, Bayer was receiving revenue from Cipro of approximately $1 billion per year, and the patent term had nearly seven years before it

¶ 5. On November 6, 2000, the appellants in the instant case commenced this action on behalf of themselves and a putative class of Wisconsin consumers who purchased Cipro during the class period. Bayer removed the case to the eastern district of Wisconsin federal court and it was subsequently transferred to the federal eastern district court in New York. On October 1, 2001, the New York district court judge remanded this matter back to the state court where it had originally been filed. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 742–43 (E.D.N.Y. 2001).

¶ 6. Upon remand of the matter back to the Milwaukee Circuit Court, Bayer filed a motion seeking to dismiss the appellants' complaint for failure to state a claim upon which relief could be granted. The trial court conducted a hearing on the motion. Following the hearing, the trial court entered an order dated September 19, 2003, concluding: "Because this court agrees that Wisconsin case law indicates that Chapter 133 applies to intrastate and not interstate commerce, the Defendants' motion to dismiss for failure to state a claim is granted. This court does not reach the merits of the Defendants' other ground for dismissal." Appellants now appeal from this order.

## DISCUSSION

¶ 7. The sole issue in this case is whether the trial court erred in dismissing the appellants' complaint. We conclude, through no fault of its own, the trial court erred in dismissing the complaint. In reviewing an order granting a motion to dismiss, we apply the same

expired. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 538 n.22 (E.D.N.Y. 2005).

standards as the trial court. *Hennig v. Ahearn*, 230 Wis. 2d 149, 164, 601 N.W.2d 14 (Ct. App. 1999). The purpose of a motion to dismiss pursuant to WIS. STAT. § 802.06(2) for failure to state a claim upon which relief can be granted, is to test the legal sufficiency of the complaint. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999); *see also Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985). When it is clear that the plaintiffs cannot recover under any conditions, a motion to dismiss should be granted. *Ramsden v. Farm Credit Servs.*, 223 Wis. 2d 704, 711, 590 N.W.2d 1 (Ct. App. 1998). When ruling on a motion to dismiss for failure to state a claim, the general rule is that the court should accept the facts as pleaded and all reasonable inferences to be drawn from them as true. *Id.*

¶ 8. Here, as noted, the trial court's decision was based on a line of authority that construed Chapter 133 very narrowly, limiting its reach to only intrastate transactions. *See Conley Publ'g Group, Ltd. v. Journal Commc'ns, Inc.*, 2003 WI 119, ¶ 16, 265 Wis. 2d 128, 665 N.W.2d 879 ("the scope of Chapter 133 is limited to intrastate transactions"). Because the facts in this case involved *interstate* transactions, the trial court ruled there was no possibility for the plaintiffs to recover.[4] However, on July 13, 2005, in *Olstad*, our supreme court withdrew the language from *Conley Publishing*, which limited the scope of Chapter 133 to intrastate transactions. *Olstad*, 284 Wis. 2d 224, ¶ 74. The court held that Chapter 133 can apply to interstate conduct in certain circumstances. *Id.*

---

[4] The appellants filed a notice to appeal the trial court's decision, but sought a stay of the appeal pending the Wisconsin Supreme Court's decision in *Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139.

¶ 9. In light of *Olstad*, it is clear that the trial court's view of the scope of Wisconsin Antitrust Act, Chapter 133 was erroneous. The instant case should not have been dismissed due to the fact that it involved interstate commerce, rather than intrastate commerce. Bayer, acknowledging the modification of the law established by *Olstad*, nevertheless argues that the trial court's dismissal was correct because the appellants failed to allege specific effects on Wisconsin consumers or on the Wisconsin economy. Bayer argues that in order to establish that the interstate transactions "substantially affected" the people of Wisconsin and had an adverse impact in Wisconsin, the appellants were required to assert specific harm, such as the number of prescriptions involved or the price paid for those prescriptions.[5] We reject Bayer's arguments.

¶ 10. In *Olstad*, our supreme court held that Wisconsin's antitrust law may apply to interstate commerce when either of the following circumstances is alleged:

> (1) actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) the conduct complained of "substantially affects" the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts

---

[5] Bayer also contends that two cases—*Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998) and *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512 (Tenn. 2005)—support its argument. These two cases, however, are distinguishable from the facts in the instant case. The facts alleged in the instant case involve in-state transactions by in-state residents. That was not the case for either *Emergency One* or *Freeman Industries*.

occurred predominantly or exclusively outside this state. Operating with lesser standards would jeopardize the action, undermine the validity of our antitrust statute, and create the spectacle of Lilliputian harassment in Wisconsin courts.

*Id.*, ¶ 85 (citation omitted). This case involves reviewing the second circumstance. Although *Olstad* itself does not specifically define "substantially affects," one of the cases *Olstad* discusses—*State v. Allied Chemical & Dye Corp.*, 9 Wis. 2d 290, 101 N.W.2d 133 (1960)—did define this term, holding that defendants were liable because *increased prices resulting from anticompetitive conduct substantially affected Wisconsin consumers:*

> The public interest and welfare of the people of Wisconsin are substantially affected if prices of a product are fixed or supplies thereof are restricted as the result of an illegal combination or conspiracy. The people of Wisconsin are entitled to the advantages that flow from free competition in the purchase of calcium chloride and other products, and if the state is able to prove the allegations made in its complaint it is apparent that the acts of the defendants deny to them those advantages.

*Id.* at 295. In reviewing the appellants' thirty-five-page complaint in this case, we accept as true the facts alleged. In their second amended complaint, appellants allege: (1) that Bayer executed an unlawful agreement that violates Wisconsin's antitrust law, by eliminating any generic competition for Cipro which, in turn, resulted in inflated prices for consumers; (2) the class represents all Wisconsin consumers who purchased Cipro in Wisconsin during the class period; (3) members of the class paid higher prices for Cipro than they otherwise would have if the Bayer monopoly had not existed; (4) identified class members purchased Cipro during the class period; (5) there are thousands of

778

Wisconsin consumers who purchased Cipro; (6) based on Bayer's illegal actions, the class members have been "overpaying for Cipro because of the absence of competing generic versions of Cipro and will continue to pay supra-competitive prices until generic versions of the drug are available"; (7) generic versions of drugs cost thirty to forty percent less than the brand name drug and can be as much as seventy to eighty percent lower in price than the brand name drug; and (8) as a result of Bayer's illegal practices, class members have suffered economic losses to be determined at trial.

¶ 11. As noted in *Allied Chemical*, the people of Wisconsin are substantially affected if the price of a product is "fixed" as a result of illegal practices. This is exactly what the appellants in the instant case have alleged in their complaint. The complaint sets forth in great detail the conduct between Bayer and Barr Laboratories as it relates to Barr Laboratories' challenge to Bayer's patent and application to market the generic version of Cipro. The complaint sets forth the terms of the settlement agreement between the two companies, wherein Bayer would make large settlement payments to Barr Laboratories to resolve Barr Laboratories' attempt to litigate Bayer's exclusive right to sell Cipro. The complaint alleges that as a result of this illegal conduct, Wisconsin residents who purchased Cipro were forced to pay increased prices and this caused an economic loss to the class members.

¶ 12. Accepting all of the allegations in the complaint as true, we conclude that the complaint should not have been dismissed by the trial court. The complaint clearly sets forth sufficient allegations which, if proven, support a claim for violating Wisconsin's antitrust law and support appellants' contention that

Bayer's conduct substantially affected the people of this state, and adversely impacted Wisconsin. WISCONSIN STAT. § 133.01 sets forth the legislative intent of this state with regard to trusts and monopolistic practices:

> The intent . . . is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition.

In addition to the liberal construction favored by the intent of this statute, we afford complaints a liberal construction in favor of stating a cause of action. *See Keller v. Welles Dep't Store of Racine*, 88 Wis. 2d 24, 28, 276 N.W.2d 319 (Ct. App. 1979). We are not to be concerned at this stage in the proceeding with whether the appellants can actually prove the allegations; that task is for the trier of fact. *Id.* at 28.

¶ 13. Accordingly, based on the recent modification by *Olstad* of anti-trust law to include both intrastate and interstate transactions under certain conditions, we conclude that the trial court erred in dismissing this case at the complaint stage. The complaint in this case adequately sets forth the required facts and allegations to withstand a motion to dismiss. Based on the foregoing, we reverse the order of the trial court and remand this case for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.