Russell J. SZUKALSKI, Josephine A. Prymek, Ronald R. Reusch, Julie A. McCoy and Stephan Hanson, Plaintiffs-Appellants,

v.

CROMPTON CORPORATION, Uniroyal Chemical Company, Inc., Uniroyal Chemical Company Limited, Flexsys NV, Flexsys America LP and Bayer AG and Bayer Corporation, Defendants-Respondents.

Court of Appeals

*No. 2003AP3132. Submitted on briefs August 1, 2006.*
*—Decided September 26, 2006.*

2006 WI App 195

(Also reported in 726 N.W.2d 304.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John C. Cabaniss* of *Von Briesen & Roper, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *G. Michael Halfenger* of *Foley & Lardner, LLP*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J.   Russell J. Szukalski, Josephine A. Prymek, Ronald A. Reusch, Julie A. McCoy and Stephan Hanson (collectively, appellants) appeal from the judgment entered against them and in favor of Crompton Corporation, Uniroyal Chemical Company, Inc., Uniroyal Chemical Company Limited, Flexsys NV,

Flexsys America L.P., Bayer America, and Bayer Corporation (collectively, Crompton), dismissing their class action complaint. The appellants contend that the trial court erred in concluding that their claim under the Wisconsin Trusts and Monopolies Act, WIS. STAT. ch. 133 (2003 04),[1] is limited to intrastate commerce because under the Wisconsin Supreme Court's subsequent decision in *Olstad v. Microsoft Corp.*, 2005 WI 121, ¶ 84, 284 Wis. 2d 224, 700 N.W.2d 139, Chapter 133, reaches interstate conduct if the alleged antitrust violation "substantially affects" Wisconsin commerce. The appellants submit that they have alleged facts that are sufficient to show that Crompton's illegal conduct has a "substantial effect" on Wisconsin.

¶ 2.   Because we conclude that the appellants have not presented facts that demonstrate that the alleged anticompetitive conduct "substantially affected" Wisconsin commerce as required by *Olstad*, we affirm.

## I. BACKGROUND.

¶ 3.   The appellants in this case are a group of Wisconsin residents who purchased automobile tires that were manufactured using certain rubber processing chemicals. On October 29, 2002, the appellants filed a class action complaint under WIS. STAT. § 803.08[2]

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] WISCONSIN STAT. § 803.08, entitled "Class actions," provides: "When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

730

against Crompton,[3] alleging a price-fixing conspiracy. The complaint alleged specifically that Crompton had entered into an agreement to conspire to fix the price of rubber-processing chemicals used in the production of automobile tires, in violation of the Wisconsin Trusts and Monopolies Act, WIS. STAT. ch. 133.[4] The complaint further alleged that, as a result of the agreement, the prices of rubber-processing chemicals were in fact raised, and because the chemicals were then sold to tire manufacturers at the raised price, the appellants were thereby injured because they were "forced to pay higher prices for tires than they would have paid absent defendants' conspiracy to fix prices."[5]

¶ 4.    On March 28, 2003, Crompton filed a motion to dismiss for failure to state a claim upon which relief can be granted, see WIS. STAT. § 802.06(2)(a)6., asserting that Chapter 133 applies only to intrastate antitrust violations, and appellants had failed to allege facts demonstrating that any conduct relating to, or in furtherance of, the challenged price fixing conspiracy occurred within the State of Wisconsin.

---

[3] In addition to Crompton Corporation, Uniroyal Chemical Company, Inc., Uniroyal Chemical Company Limited, Flexsys NV, Flexsys America L.P. and Bayer Corporation, the class action complaint also included as defendants Rhein Chemie Rheinau GmbH and Rhein Chemie Corporation; however, both were subsequently dismissed as defendants. Bayer America was later added as a defendant.

[4] WISCONSIN STAT. § 133.03(1) provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."

[5] At the time the complaint was filed in this case, it was one of more than twenty similar class action suits filed in different state courts throughout the country.

¶ 5. On July 17, 2003, the Wisconsin Supreme Court issued its decision in *Conley Publishing Group, Ltd. v. Journal Communications, Inc.*, 2003 WI 119, 265 Wis. 2d 128, 665 N.W.2d 879, in which the court noted that "the dearth of state antitrust precedent is not surprising because the scope of Chapter 133 is limited to intrastate transactions." *Id.*, ¶ 16.

¶ 6. The trial court heard Crompton's motion on October 13, 2003. Relying on, among other things, *Conley*, Crompton reiterated that the complaint should be dismissed because Chapter 133 applies to intrastate transactions only, and the facts alleged by the appellants suggest a national problem, not a problem specific to Wisconsin. The appellants admitted that none of the activities complained of took place in Wisconsin and that they took place without the involvement of a Wisconsin entity. They insisted, however, that the language in *Conley* is dicta, that the question of whether Chapter 133 applies to interstate commerce is "totally open," and that they should be able to bring the case in Wisconsin because the economic harm took place in Wisconsin.

¶ 7. The trial court held that Chapter 133 was not implicated here because only the ultimate result was in Wisconsin, explaining that a Chapter 133 action requires that the parties and/or the actions that produce the harm be in Wisconsin. On October 29, 2003, the court entered a judgment granting Crompton's motion and dismissing the appellants' claims with prejudice. The appellants appealed the dismissal of their complaint.

¶ 8. While the appeal was pending, the Wisconsin Supreme Court accepted certification of *Olstad* on the question: "Does Wisconsin's antitrust act, WIS. STAT. § 133.03, apply to interstate commerce affecting Wis-

consin commerce?" *Olstad*, 284 Wis. 2d 224, ¶ 10. The appellants sought a stay of their appeal pending the resolution in *Olstad*. This court granted the stay.

¶ 9.   On July 15, 2005, the supreme court issued its decision in *Olstad*, holding that "Chapter 133, particularly § 133.03, applies to interstate commerce, at least in some circumstances." *Olstad*, 284 Wis. 2d 224, ¶ 74. The court explained that one such circumstance is when "the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state." Id., ¶ 85 (citation omitted).

¶ 10.   In response to *Olstad*, Crompton moved this court to summarily remand the case to the trial court for proceedings to consider whether the appellants have stated an antitrust claim against Crompton under the new interpretation of Chapter 133, or, in the alternative, requested additional time to file their responsive appellate brief. On October 25, 2005, this court denied the motion to remand the case, but granted the motion for additional time.

## II. ANALYSIS.

¶ 11.   The issue is whether, in light of the supreme court's recent holding in *Olstad*, the trial court erred in dismissing the appellants' complaint for failure to state a claim, or whether, in spite of basing its decision on the state of the law pre *Olstad*, the dismissal of the complaint was nevertheless correct under *Olstad*.[6]

---

[6] Crompton also alleged that the appellants lack standing to sue. WISCONSIN STAT. § 133.18(1) confers standing to "any person injured, directly or indirectly" by conduct alleged under Chapter 133. The legislature has directed courts to construe Chapter 133

¶ 12.　We review the trial court's dismissal of the appellants' complaint for failure to state a claim on which relief can be granted de novo. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 11, 270 Wis. 2d 146, 677 N.W.2d 233; see WIS. STAT. § 802.06(2)(a)6. A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the pleading. *Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985). In reviewing a dismissal for failure to state a claim, we, like the trial court, must accept as true the allegations of the plaintiff's complaint. See *Tietsworth*, 270 Wis. 2d 146, ¶ 11.

¶ 13.　The statute in question, WIS. STAT. § 133.03(1), provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."[7]

---

liberally, stating "[i]t is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition." WIS. STAT. § 133.01. Additionally, our supreme court has directed us not to construe the standing requirement narrowly. *See, e.g., Bence v. City of Milwaukee*, 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982). While the injury alleged by the appellants was certainly indirect, we are satisfied that the injury alleged does meet the threshold standard of standing and therefore address the merits of the appellants' argument.

[7] WISCONSIN STAT. § 133.01 explains the intent of Chapter 133:

> The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the

Since 1914, *see Pulp Wood Co. v. Green Bay Paper & Fiber Co.*, 157 Wis. 604, 147 N.W. 1058 (1914), a long line of cases, including the clearest pronouncement in *Conley* in 2003, have stated that the scope of Chapter 133 is limited to intrastate commerce.

¶ 14. In *Olstad*, the supreme court, as noted, held "that Chapter 133, particularly § 133.03, applies to interstate commerce, at least in some circumstances." *Olstad*, 284 Wis. 2d 224, ¶ 74. The court came to this conclusion by determining that, despite a general consensus, starting with *Pulp Wood* in 1914, Chapter 133 applied only in an intrastate context, Chapter 133 had in fact been applied inconsistently, because there were two "notable exceptions": *State v. Allied Chemical & Dye Corp.*, 9 Wis. 2d 290, 101 N.W.2d 133 (1960), and *State v. Milwaukee Braves, Inc.*, 31 Wis. 2d 699, 144 N.W.2d 1 (1966). *Olstad*, 284 Wis. 2d 224, ¶¶ 21–28. After a thorough analysis of the legislative history, id., ¶¶ 29–73, the court in *Olstad* expressly withdrew the language from *Conley* that read that " 'the scope of Chapter 133 is limited to intrastate transactions." ' *Olstad*, 284 Wis. 2d 224, ¶ 74 (quoting Conley, 265 Wis. 2d 128, ¶ 16).

¶ 15. The court then explained when the scope of Chapter 133 can reach beyond intrastate transactions:

> A civil plaintiff filing an action under Wisconsin's antitrust act must allege that (1) actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) the conduct com-

fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public interest as requiring the preservation and promotion of the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature.

plained of "substantially affects" the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state. *Allied Chemical*, 9 Wis. 2d at 295.

*Olstad*, 284 Wis. 2d 224, ¶ 85; *see also Meyers v. Bayer AG*, 2006 WI App 102, 293 Wis. 2d 770, 718 N.W.2d 251 (applying *Olstad* to a situation where the actual product around which the alleged conspiracy centered was sold to purchasers in Wisconsin). The *Olstad* court added:

> Operating with lesser standards would jeopardize the action, undermine the validity of our antitrust statute, and create the spectacle of Lilliputian harassment in Wisconsin courts. Questions of provincialism, favoritism, and undue burden on interstate commerce should be determined by resort to contemporary federal commerce clause jurisprudence. To say more is beyond the scope of this opinion.

*Id.*, 284 Wis. 2d 224, ¶ 85.

¶ 16. Because the appellants do not allege that any of the actionable conduct occurred in Wisconsin, the first scenario mentioned in *Olstad* for when Chapter 133 can apply to interstate commerce is inapplicable, so the question is only whether the people of Wisconsin were "substantially affected" by the alleged conspiracy. *See id.* The central issue thus becomes whether the appellants have alleged sufficient facts to support a finding that Wisconsin commerce was "substantially affected" by an alleged conspiracy among non-Wisconsin entities, to fix the prices of rubber-processing chemicals that were sold to non-Wisconsin tire manufacturers, who used the chemicals to process rubber that was used to make tires that were sold to purchasers in Wisconsin.

¶ 17. Although *Olstad* clearly held that Chapter 133 can be applied to situations that involve interstate commerce where the conduct has a "substantial effect" on Wisconsin, the court did not specify what constitutes a "substantial effect." However, in reaching its conclusion, the *Olstad* court examined the two previous cases that had addressed the possible applicability of Chapter 133 in an interstate context, *Allied Chemical* and *Milwaukee Braves*, both of which present a line of reasoning consistent with the "substantial effect" test. *Olstad* noted that, in *Allied Chemical*, the court concluded: "The public interest and welfare of the people of Wisconsin are substantially affected if prices of a product are fixed or supplies thereof are restricted as the result of an illegal combination or conspiracy. The people of Wisconsin are entitled to the advantages that flow from free competition . . . ." *Olstad*, 284 Wis. 2d 224, ¶ 25 (quoting *Allied Chemical*, 9 Wis. 2d at 295). Likewise in *Milwaukee Braves*, which cited *Allied Chemical*, the court reasoned as follows:

> "[Major League Baseball] terminated very substantial business activity in Wisconsin . . . . On their face, these facts support a conclusion that there is a combination or conspiracy in restraint of trade and commerce, declared illegal by the first sentence of sec. 133.01, Stats., as well as a combination to monopolize trade . . . .
>
> . . . .
>
> The state may, ordinarily, protect the interests of its people by enforcing its antitrust act against persons doing business in interstate commerce . . . ."

*Olstad*, 284 Wis. 2d 224, ¶ 26 (quoting *Milwaukee Braves*, 31 Wis. 2d at 713–14; alteration in *Olstad*).

¶ 18. Another case also cited by *Olstad is Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998). Like the court in *Olstad*, in *Emergency One* the Federal District Court for the Eastern District of Wisconsin also reached the conclusion that in some circumstances WIS. STAT. § 133.03 applies to interstate commerce. *Emergency One*, 23 F. Supp. 2d at 966. Specifically, the court held that where "unlawful activity . . . has significantly and adversely affected trade and economic competition within this state," Chapter 133 applies in an interstate context, *id.* at 969, a standard very similar to *Olstad's* "substantial effect." In *Olstad*, the court noted that in *Emergency One* the deciding factors were the same as in *Olstad*, namely, the legislative history, and the *Allied Chemical* and *Milwaukee Braves* cases. *Olstad*, 284 Wis. 2d 224, ¶ 75 (citing *Emergency One*, 23 F. Supp. 2d at 966–67). In *Emergency One*, which involved fire trucks, the court went on to apply the "significant and adverse effect" test, emphasizing that the plaintiff had to make allegations specific to Wisconsin. *Emergency One*, 23 F. Supp. 2d at 971. The court found that the plaintiffs had failed to "indicate how many fire trucks are sold in Wisconsin per year, how many by plaintiff, or how many by plaintiff's competitors," and that "[n]o further allegations narrow[ed] [the] number [of sales nationwide] to fire trucks sold to Wisconsin purchasers." *Id.* The court concluded that that the plaintiffs had failed to show that the alleged conduct had a "significant and adverse effect" and that "the connection between plaintiff's injury and Wisconsin commerce [was] tenuous at best." *Id.*

¶ 19. Also instructive is *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512 (Tenn. 2005). In *Freeman*, citing *Olstad*, the Tennessee Supreme

Court adopted the "substantial effects" test as the standard in Tennessee and explained that "[t]he focus under the substantial effect standard . . . is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce." *Freeman*, 172 S.W.3d at 524 (emphasis in *Freeman*). The court rejected the plaintiffs' allegations that the defendants had fixed the price of certain food preservatives because the plaintiffs had made only general allegations that were insufficient to demonstrate a substantial effect. *Id.* The court explained:

> While Freeman alleged that Eastman took orders and implemented sales to customers at the new prices from Tennessee, we do not believe that this bare allegation without more is sufficient to establish that Tennessee commerce was substantially affected. Furthermore, Freeman fails to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in Freeman paying higher prices to retailers for items containing [the food preservatives].

*Id.*

¶ 20.   As Crompton notes, what can be gathered from these cases is that the substantial effects test requires that the appellants allege:    (1) specific effects on Wisconsin commerce, not merely effects that are nationwide, *see Emergency One*, 23 F. Supp. 2d at 971; and (2) that these effects on Wisconsin are more than a general nationwide effect on the price, *see Freeman*, 172 S.W.3d at 524.

¶ 21.   Against this backdrop, we next analyze the appellants' arguments. The appellants, as noted, concede that none of the illegal conduct took place in

Wisconsin or involved any Wisconsin entities, and base their argument entirely on the allegation that the injury came about as a result of price-fixing of rubber-processing chemicals outside Wisconsin, which affected the price at which chemicals were sold to tire manufacturers outside Wisconsin, which in turn had a "substantial effect" on the price of tires in Wisconsin. They submit that: "Respondents have therefore reaped thousands (if not millions) of dollars of illegal profits in the state of Wisconsin—plainly the type of substantial effect and impact that the Olstad court was concerned about in extending the reach of the Wisconsin Antitrust act to interstate commerce." We are not convinced.

¶ 22. The complaint alleges that Crompton's "actions have affected commerce within the State of Wisconsin." The only allegation with respect to damages is: "Defendants' supracompetitive pricing is reflected in the price consumers pay for tires that are manufactured using these rubber-processing chemicals." The only allegation that suggests potential damages is:

> The rubber-processing chemical market represents a significant amount of the commerce in the United States as a whole and in Wisconsin specifically. For example, the United States rubber-processing market had an estimated value of over $900 million in 1999, which was expected to grow at a rate of 1.2% per year through 2004. Almost half of this market (48%) is comprised of antidegradants, with accelerators and miscellaneous rubber-processing chemicals making up the majority of the remainder of the market.

With respect to the price paid, the complaint suggests only that "[f]rom 1994 to the present, defendants unlawfully conspired to, and did in fact, raise and fix the

price of rubber processing chemicals which resulted in Plaintiffs paying greater prices for tires in the State of Wisconsin."

¶ 23. The appellants, in other words, assert that they were "substantially affected" by Crompton's actions when they purchased a wholly different product—tires—whose sellers and manufacturers they do not accuse of anticompetitive behavior. Even accepting the appellants' conclusory allegation that Crompton's actions that are two steps removed from the tires have affected Wisconsin commerce, we are not convinced that under *Olstad* they could be found to have "substantially affected" Wisconsin commerce.

¶ 24. Beyond their conclusory statement that "[t]he rubber-processing chemical market represents a significant amount of the commerce in the United States as a whole and in Wisconsin specifically," the appellants fail to allege how the market affects commerce "in Wisconsin specifically." Indeed, the example that follows is a nationwide statistic which, rather than support the claim that the problem is specific to Wisconsin, supports the conclusion that the issue is a national one. The appellants provide no specific allegations as to the number of tires sold in Wisconsin or how the tire manufacturers' use of the chemicals affected the price of the tires. *See Emergency One*, 23 F. Supp. 2d at 971. In fact, there is nothing in the complaint with respect to the dollar value in Wisconsin, or, most significantly, the amount added to the cost of tires by the alleged conspiracy. *See Freeman*, 172 S.W.3d at 524. The appellants' claims are general assertions of what appears to be a nationwide issue, not allegations that show a problem that has a "substantial effect" on Wisconsin. *See Olstad*, 284 Wis. 2d 224, ¶ 85.

¶ 25.   In fact, the appellants' claims appear to be advancing precisely the kind of "spectacle of Lilliputian harassment" that the supreme court cautioned against in *Olstad* when it emphasized the need for a high standard for the application of Chapter 133 in an interstate context. *See id.* Allowing the appellants' claims to go forward and holding the defendants liable in this case would make no more sense than to allow every resident in the State of Wisconsin to be a party to this lawsuit because goods delivered by trucks use tires as a necessary component of transportation, and truck owners had to pay higher prices for their tires, which was passed on to consumers in the price of the consumer goods.

¶ 26.   Accordingly, even though the trial court dismissed this action based on the state of the law before *Olstad,* we affirm because, even under *Olstad,* the complaint is significantly lacking in the kind of specificity that is required, Wis. Stat. § 802.02(1)(a),[8] and presents nothing beyond mere speculation.[9]

---

[8] Wisconsin Stat. § 802.02(1)(a) requires a "short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises in showing that the pleader is entitled to relief."

[9] On May 9, 2006, this court issued a decision in *Meyers v. Bayer AG,* 2006 WI App 102, 293 Wis. 2d 770, 718 N.W.2d 251. Like this case, *Meyers* addressed the application of *Olstad* to a case in which the trial court had granted a motion to dismiss prior to *Olstad.* In *Meyers,* this court reversed under *Olstad,* concluding that the complaint had adequately set forth the required facts to withstand a motion to dismiss. In August 2006, the supreme court accepted certiorari of *Meyers.* In response, Crompton asked this court for a contingent stay on deciding the case pending the supreme court's decision in *Meyers.*

Although *Meyers* was the first decision to apply the *Olstad* test, we do not view *Meyers's* application of *Olstad,* and the upcoming review of that decision by the Wisconsin Supreme

*By the Court.*—Judgment affirmed.

Court, as restricting our ability to apply *Olstad* to this case. *Meyers*, unlike this case, involved a specific product (the antibiotic drug Cipro) that had clearly been sold to Wisconsin consumers. Here, by contrast, the rubber-processing chemicals were much further removed from the Wisconsin consumers who purchased tires from vendors in Wisconsin, who had in turn purchased the tires from tires manufacturers, and who had then in turn purchased the chemicals from the alleged conspirators. *Meyers* is thus clearly distinguishable and, as such, is inapplicable to the resolution of this case.