Ann E. Ladd, Plaintiff-Appellant,

v.

Robert G. Uecker and Milwaukee Brewers
Baseball Club, L.P., Defendants-Respondents.

Court of Appeals

*No. 2009AP596. Submitted on briefs November 13, 2009.*
*—Decided January 27, 2010.*

2010 WI App 28

(Also reported in 780 N.W.2d 216.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ann Ladd,* pro se.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Katherine M. Longley* of *Foley & Lardner, LLP,* Milwaukee.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J.   Ann E. Ladd appeals the dismissal of her complaint and amended complaint against Robert G. Uecker and the Milwaukee Brewers Baseball Club, L.P. The court granted Uecker's and the Brewers' motion to dismiss because the court concluded that, as to most of the defamation and invasion of privacy claims, the complaint was filed beyond the statute of limitations, and the remaining allegations failed to state a claim because they involved statements protected by various privileges. We agree and affirm.

¶ 2.   Uecker is the radio broadcaster for the Brewers. In June 2006, Uecker petitioned the Milwaukee County Circuit Court for an injunction against Ladd pursuant to Wis. Stat. § 813.125 (2007–08),[1] alleging a six- or seven-year pattern of harassment. Around the same time, Ladd—a self-described "devoted fan"—was

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless noted.

charged with felony stalking. The injunction petition hearing was held on July 3 and September 7, 2006. The court commissioner found probable cause and issued an injunction. Ladd did not seek de novo review or file a notice of appeal. Soon after the injunction issued, the prosecutor dismissed the criminal charge.

¶ 3. Without first giving written notice, *see* WIS. STAT. § 895.05(2), on September 8, 2008,[2] Ladd filed a sprawling pro se complaint alleging that between June 1 and September 7, 2006, Uecker defamed her in the affidavit supporting the injunction petition; he and/or the Brewers published the allegedly defamatory affidavit to a website called thesmokinggun.com; the Brewers posted on their website a defamatory article regarding her removal from a spring training game in Maryvale, Arizona; and a claim for "false light invasion of privacy" for, among other things, making and republishing false, defamatory statements and photographing her in the stands at various baseball stadiums.

¶ 4. Uecker and the Brewers moved to dismiss Ladd's complaint. They asserted that: (1) the claims relating to Uecker's affidavit are barred because they fall outside the WIS. STAT. § 893.57 two-year statute of limitations; (2) those claims are further barred by the absolute privilege for statements made in the course of judicial proceedings; (3) the sole defamation claim not barred by the statute of limitations, the March 2007 Associated Press (AP) news story appearing on the Brewers' website, is protected by the "wire-service" privilege; and (4) Wisconsin does not recognize "false light invasion of privacy" and Ladd pled no facts showing an invasion of any privacy rights Wisconsin does recognize.

---

[2] September 7, 2008, fell on a Sunday, giving Ladd until September 8. *See* WIS. STAT. § 990.001(4)(b).

¶ 5. In her response, Ladd acknowledged her "oversight" that Wisconsin does not recognize "false light invasion of privacy," but contended that her complaint nonetheless stated an invasion of privacy cause of action under WIS. STAT. § 995.50. Four days before the hearing on the motion, Ladd filed an amended complaint materially the same as the original complaint except that she renamed the prior "False Light Invasion of Privacy—Distress" to "Emotional Distress and Invasion of Privacy."

¶ 6. After a hearing, the circuit court concluded that the statute of limitations bars Ladd's claims for all matters occurring before September 7, 2006; that statements Uecker made during the September 7, 2006 hearing enjoy absolute judicial immunity; that the AP news story is protected by the wire-service privilege; and that Ladd's invasion of privacy claims lack legal support. Based on Ladd's assertion that the amended complaint essentially mirrored the initial one, the court dismissed them with prejudice. Ladd filed this appeal.

¶ 7. A motion to dismiss tests the legal sufficiency of the complaint. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997). On review, we accept as true the alleged facts and their reasonable inferences, but we draw all legal conclusions independently. *Walberg v. St. Francis Home, Inc.*, 2005 WI 64, ¶ 6, 281 Wis. 2d 99, 697 N.W.2d 36. When a plaintiff clearly cannot recover under any conditions, a motion to dismiss should be granted. *Meyers v. Bayer AG*, 2006 WI App 102, ¶ 7, 293 Wis. 2d 770, 718 N.W.2d 251, *aff'd*, 2007 WI 99, 303 Wis. 2d 295, 735 N.W.2d 448.

¶ 8. The elements of a common law action for defamation are: (1) a false statement; (2) communicated

by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472 (1997). If we determine the matter complained of is not defamatory, that generally ends the matter. *See Lathan v. Journal Co.*, 30 Wis. 2d 146, 151, 140 N.W.2d 417 (1966).[3] If it is defamatory, we must consider the defenses alleged. *Id.* Truth is a complete defense. *Id.* Even if false, however, it still may have the benefit of either absolute or conditional privilege. *See id.* An absolute privilege gives complete protection while a conditional privilege may be forfeited if abused. *Vultaggio v. Yasko*, 215 Wis. 2d 326, 331, 572 N.W.2d 450 (1998).

¶ 9. Ladd's September 8, 2008 complaint alleges that Uecker defamed her: (1) in the affidavit in support of his petition for the harassment injunction; (2) by publishing the affidavit to thesmokinggun.com; (3) during the two-day injunction hearing; and (4) in a media interview after the first day of the hearing. Distilled to its essence, Ladd's claim is that the false depiction of her as a stalker has damaged her personal and professional reputations. Except for the continued injunction hearing on September 7, 2006, however, all of these incidents occurred more than two years before Ladd filed her complaint. An action to recover damages for a defamatory communication is barred if not commenced within two years after the cause of action accrues. Wis. Stat. § 893.57.

---

[3] We opt to address all of Ladd's claims on the merits.

¶ 10. Ladd disagrees. She argues that the statute of limitations does not bar her claim because, under *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983), her defamation claim did not accrue until she discovered or reasonably could have discovered her injury. Neither Ladd's original nor her amended complaint contains any factual allegations implicating the discovery rule, however. This assertion has no merit.

¶ 11. Ladd also argues that, although Uecker and/or the Brewers allegedly posted his affidavit to thesmokinggun.com on June 2, 2006, the purportedly defamatory statements still can be accessed on the Internet today. She contends that the information therefore is republished each time someone visits that website or others to which the material has found its way, thus renewing her cause of action. We disagree. "Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." RESTATEMENT (SECOND) OF TORTS § 577A(3) (1977). Wisconsin has not yet addressed the multiple- or single-publication rule head-on. *See Voit v. Madison Newspapers, Inc.*, 116 Wis. 2d 217, 227, 341 N.W.2d 693 (1984) (Abrahamson, J., concurring); *see also id.* at 223. The great majority of courts have, however, followed the single-publication rule. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 n. 8 (1984); *see also* RESTATEMENT (SECOND) OF TORTS § 577A, Reporter's Note.

¶ 12. Some courts have applied the single-publication rule specifically to publication on the Internet. *See, e.g., Firth v. State*, 775 N.E.2d 463, 465–66 (N.Y. 2002). We do so here. We hold that "republishing" the allegedly defamatory information about Ladd on the

806

Internet is not actionable. Accepting as we must on this review that Uecker or the Brewers were responsible for the initial publication to thesmokinggun.com on June 2, 2006, that act is outside the statute of limitations.[4] Uecker and the Brewers have no control over other websites' use or dissemination of the same information on the World Wide Web. We reject the notion that each "hit" or viewing of the information should be considered a new publication that retriggers the statute of limitations.

■■■

¶ 13.  As to Uecker's September 7, 2006 injunction hearing testimony, even if it conceivably could be construed as defamatory, it is not actionable. Statements "pertinent or relevant to the case" that are made in the course of judicial proceedings are absolutely privileged and insulate the speaker from liability. *Bergman v. Hupy*, 64 Wis. 2d 747, 750, 221 N.W.2d 898 (1974). Uecker's written affidavits and courtroom testimony are absolutely privileged.

¶ 14.  Ladd asserts, however, that Uecker's statements lost their absolute privilege through "excessive publication" on the Internet, because the "stalker label" "defame[ed] [her] as a criminal" and because Uecker defamed her to law enforcement officials. *See* RESTATEMENT (SECOND) OF TORTS § 604 (1977) (addressing loss of privilege through excessive publication of defamatory material); *State v. Gilles*, 173 Wis. 2d 101, 111, 496 N.W.2d 133 (Ct. App. 1992) (stating that a conditional

---

[4] Even apart from the single-publication rule analysis, the thesmokinggun.com posting updated in October 2006 is not actionable. It contains only verifiable, objective facts regarding the issuance of the injunction and dismissal of the felony stalking charge against her. Truth is a complete defense. *Lathan v. Journal Co.*, 30 Wis. 2d 146, 151, 140 N.W.2d 417 (1966).

privilege applies to criminal defamation); and *Heggy v. Grutzner*, 156 Wis. 2d 186, 192, 456 N.W.2d 845 (Ct. App. 1990) (stating that defamatory statements to law enforcement officers are conditionally privileged). Ladd is mistaken in several respects.

¶ 15. First, we are unpersuaded that Uecker's factual statements amount to defamation in the first instance, despite negative fallout to Ladd. Second, even if untrue, statements made in judicial proceedings are absolutely privileged. *Lathan*, 30 Wis. 2d at 151. An absolute privilege gives "complete protection." *Vultaggio*, 215 Wis. 2d at 331. Third, these were civil, not criminal, proceedings; even so, the absolute privilege for statements made in judicial proceedings applies equally to criminal and civil defamation. *See State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 541, 579 N.W.2d 678 (1998). Fourth, Uecker's June 2006 statements to the police in connection with his attempt to secure an injunction against her are beyond the statute of limitations. Finally, the statute of limitations also defeats Ladd's "excessive publication" claim regarding Uecker's June 2006 affidavit.

¶ 16. Ladd's complaints that the Brewers defamed her likewise fail. The Brewers advised Ladd in December 2006 that, in light of the harassment injunction, they would deny her entrance to the spring training facility in March 2007 should she purchase a ticket. Upon finding her in the stands, they were entitled to have her removed. As Ladd's ticket indicates,[5] a ticket of admission

---

[5] Ladd included a photocopy of her ticket as an exhibit, evidently to show she had a right to be at the game. The ticket reads: "The license granted by this ticket to enter the Club baseball game is revocable."

808

to a place of amusement is simply a license to view a performance that the owner or proprietor may revoke at will. *See* 27A AM.JUR. 2D *Entertainment and Sports Law* § 42 (2008); *see also Soderholm v. Chicago Nat'l League Ball Club, Inc.*, 587 N.E.2d 517, 520–21 (Ill. App. Ct. 1992). Any statements the Brewers may have made to the Phoenix police in connection with the incident enjoy a conditional privilege, *see Heggy*, 156 Wis. 2d at 192, which Ladd has not rebutted by showing actual malice. *See Otten v. Schutt*, 15 Wis. 2d 497, 504, 113 N.W.2d 152 (1962).

¶ 17.   Ladd then directs us to an allegedly defamatory March 20, 2007 article in the Brewers' online news archive about the Maryvale incident. Assuming, as Ladd contends, that the Brewers posted the story there, and accepting simply for argument's sake that the article is defamatory, this claim also fails. Before filing suit, Ladd did not give written notice to the Brewers providing them "a reasonable opportunity to correct the libelous matter." *See* WIS. STAT. § 895.05(2). Her failure to give notice is fatal to her claim. *See Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 374, 302 N.W.2d 68 (Ct. App. 1981).

¶ 18.   Furthermore, the report bears an AP copyright. The Brewers are protected by the "wire-service" privilege, under which news disseminators "that rely on the accuracy of a wire service release are not negligent as a matter of law." *See Van Straten v. Milwaukee Journal Newspaper-Publisher*, 151 Wis. 2d 905, 920, 447 N.W.2d 105 (Ct. App. 1989) (describing the privilege); *see also Cole v. Star Tribune*, 581 N.W.2d 364, 368 (Minn. Ct. App. 1998) (stating that Wisconsin has adopted it). The

809

AP story also bears a disclaimer that it "was not subject to the approval of Major League Baseball or its clubs."

¶ 19.  Lastly, Ladd acknowledges that Wisconsin does not recognize false light invasion of privacy, to which she made an "errant" reference in her initial complaint. She argues, however, that Uecker and the Brewers nonetheless invaded her privacy by recklessly or unreasonably disclosing her private information, which caused her to suffer "massive repercussions on [her] livelihood and well-being."

■

¶ 20.  In Wisconsin, "invasion of privacy" means a highly offensive intrusion upon another's privacy in a place a reasonable person would consider private or in a manner actionable for trespass; using, without written consent, a person's name, portrait or picture for advertising or trade; giving publicity to a person's private matters "of a kind highly offensive to a reasonable person," unless the information is available to the public as a matter of public record; or conduct involving depictions of nudity. WIS. STAT. § 995.50(2). Ladd alleges that the Brewers took photographs of her in the stands at baseball parks and disseminated her "mug shot" and information about the injunction and the spring training incident. None of these involved private places, using her likeness for advertising or trade, or depictions of nudity. Further, they are matters of public record. She did not plead facts that satisfy an invasion of privacy claim.

*By the Court.*—Order affirmed.