Wanda Keller, Allan G. Keller and Greggory
Lentz, Plaintiffs-Appellants-Cross-Respondents,

v.

Barbara Patterson,
Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 2011AP334. Submitted on briefs April 26, 2012.
—Decided June 20, 2012.*

2012 WI App 78

(Also reported in 819 N.W.2d 841.)

† Petition for Review filed 8/22/12; Petition for Cross
Review filed 9/21/12.

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Lisa C. Goldman* and *Bruce M. Davey* of *Lawton & Cates, S.C.*, of Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *James A. Walrath* of *Law Offices of James A. Walrath, LLC*, of Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. BROWN, C.J.   This case stems from Barbara Patterson's actions after she learned that her neighbor Wanda Keller's son, a convicted sex offender, was living in her community. Wanda and Allan G. Keller complain that Patterson distributed fliers containing contact information for the sex offender and identifying them as his parents with whom he lived. The situation eventually escalated, and the Kellers obtained counsel, who wrote a letter to Patterson expressing their intent to file a lawsuit. Patterson then petitioned for and received temporary restraining orders against Wanda and her other son, Greggory Lentz, based on allegations she now admits were largely false. She voluntarily dismissed the petitions before serving them. Eventually, the Kellers and Greggory filed this lawsuit alleging invasion of privacy, defamation, and abuse of process. The trial court granted summary judgment to Patterson on all of the Kellers' claims. We affirm the trial court as to the invasion of privacy and defamation claims, but reverse as to the abuse of process claim— the undisputed facts in the record could lead a reasonable fact finder to conclude that Patterson abused the legal process when she made false allegations against the Kellers and Greggory. We also address and reject Patterson's cross-appeal, which is based on the premise that the Kellers' claims in this case were frivolous.

## BACKGROUND

¶ 2.   The Kellers are longtime residents of the Grafton community. Wanda has two sons, Greggory and Michael Lentz, both of whom are adults. Michael is a convicted sex offender who lived with the Kellers during all times pertinent to this case. Patterson is the Kellers' neighbor, but she did not know the Kellers, Michael or Greggory prior to receiving an anonymous

mailing stating that a "new neighbor," Michael Lentz, had a conviction for second-degree sexual assault of a child.

¶ 3.  After receiving the mailing, Patterson and another neighbor distributed a six-page flier with information about Michael around the community. The flier included:  a printout from the DOC website with a picture of Michael; a page of information listing Wanda and Allan as Michael's parents and including their address and phone number; two pages from the DOC sex offender registrant information website regarding Michael; a printout from the Wisconsin Court System Access website, more commonly referred to as CCAP, listing the offenses for which Michael was convicted; and a page with information about the time and location of a meeting set for April 15, 2009, to discuss the matter.

¶ 4.  Once the fliers were distributed, the Kellers began receiving phone calls with no one on the line. People also drove down the street honking or stopping to look at their house and the Kellers received mail about Michael. Greggory, who does not live with Michael and the Kellers, became involved when he saw someone looking at one of the fliers in a park. He mistakenly believed that the woman who was reading the flier had posted it and began yelling at her. When a man intervened, Greggory bumped him in the chest. Greggory was cited for disorderly conduct for the incident.

¶ 5.  At some point, the Kellers retained counsel, who mailed a letter dated August 25, 2009, to Patterson informing her that the Kellers intended to file a complaint against her for invasion of privacy. The letter also asked Patterson to contact the Kellers' attorney if she wished to resolve the matter without litigation. On

August 27, 2009, without responding directly to the letter, Patterson petitioned for temporary restraining orders against Wanda and Greggory. She also filed a summons and complaint against the Kellers and both Lentz brothers, alleging "harassment, slander, extortion, and threat to life." The petitions and complaint alleged the following:

(1) That Greggory had guns in his home or possession that he had threatened to use against Patterson at a meeting.

(2) That Wanda had guns in her home or in her sons' homes and had threatened to use them against Patterson at a meeting.

(3) That Greggory had "documented violent behavior and . . . threat[ened] to use firearms in confrontive discussions."

(4) That "Wanda Keller, her Pastor, and her friends" had been sending threatening letters and making threatening calls to her.

(5) That the Kellers had been "spread[ing] mistruths and undocumented facts about [Patterson], most recently to [their attorney]."

(6) That the Kellers' attorney, with the Kellers' approval, had "accuse[d] [Patterson] of untoward behavior, and actions, without proof or discovery, in a premeditated attempt to slander the reputation of [Patterson]."

As a result of the petitions, temporary restraining orders were issued against Wanda and Greggory. Then, before the petitions or complaint were served, Patterson voluntarily dismissed them.

¶ 6. On December 7, 2009, the Kellers and Greggory filed this action alleging invasion of privacy, defamation, and abuse of process. When Patterson was

575

deposed, she was asked to support the allegations she made in her complaint and petitions for temporary restraining orders. Regarding the guns that Wanda and Greggory allegedly threatened to use against her at a meeting, Patterson stated that those allegations were based on her understanding that Greggory had asked police whether he could bring a gun to the meeting about his brother "because he thought there might be violence." In support of other allegations in the complaint, she identified one unsigned letter that she found threatening and believed to be written by Wanda. When asked about threatening phone calls, she could not identify a single phone call from the Kellers in her telephone records. Finally, her testimony indicates that the allegations of spreading "mistruths" were entirely based on the Kellers' attorney's letter to her, which she felt portrayed her "as a person premeditatively trying to injure this family."

¶ 7.   Patterson moved for summary judgment on all of the Kellers' claims, and the trial court granted her motion. The Kellers and Greggory appeal.

## DISCUSSION

■■

¶ 8.   We review summary judgment decisions de novo, applying the same methodology as the trial court. *Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 20, 291 Wis. 2d 393, 717 N.W.2d 58. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114,

¶ 30, 283 Wis. 2d 384, 700 N.W.2d 27; *see also* WIS. STAT. § 802.08(2) (2009–10).[1] Here, the facts are undisputed but lead to some competing inferences. In such cases, we view the inferences to be drawn from the undisputed facts in the light most favorable to the nonmoving party. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 22–23, 241 Wis. 2d 804, 623 N.W.2d 751.

## *Invasion of privacy*

¶ 9.   We first address the Kellers' invasion of privacy claim, which is based on WIS. STAT. § 995.50(2)(a) & (c). Those subsections define "invasion of privacy" as follows:

> (a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.
>
> . . . .
>
> (c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

*Id.*

¶ 10.   We begin with the Kellers' claim based on WIS. STAT. § 995.50(2)(a). Subsection (2)(a) has a spatial basis—the invasion of privacy must occur "in a place

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

that a reasonable person would consider private or in a manner which is actionable for trespass." The Kellers argue that the hang-up calls, letters, and cars honking their horns in front of their house amounted to an invasion of their home. We disagree. There was no physical intrusion of the Kellers' home by Patterson or even at Patterson's direction.[2] The Kellers cite nothing on point supporting the proposition that phone calls, letters, and honking car horns by third parties are enough to constitute invasion of privacy under subsection (2)(a).[3] Perhaps there is no such case law. Our own research revealed no case which explicitly allows a plaintiff to make a spatial argument based on some nonphysical invasion.

[2] Although the Kellers argue that one can reasonably infer that Patterson was one of the people making calls, writing letters, and/or honking car horns in front of the Patterson's house, they present no phone records or testimony to support that inference.

[3] The Kellers do cite to comments in the RESTATEMENT (SECOND) of Torts (1977) § 652A & B as persuasive authority that Patterson could be liable for the phone calls and honking horns, but as they acknowledge, the RESTATEMENT (SECOND) is worded differently and therefore has limited applicability to this case. *See Hillman v. Columbia Cnty.*, 164 Wis. 2d 376, 392, 474 N.W.2d 913 (Ct. App. 1991) (noting that while our legislature used the word "place" to describe the area of invasion, the RESTATEMENT (SECOND) uses the broader phrase "solitude or seclusion of another or his private affairs or concerns"). Because of that, the comments cited by the Kellers simply do not help their case.

They also cite to *Steiger v. Nowakowski*, 67 Wis. 2d 355, 359, 227 N.W.2d 104 (1975), for the proposition that "[u]nder the law of trespass, entry upon another's land need not be in person, but may be made ' . . . by causing or permitting a thing to cross the boundary of the premises.' " (Citation omitted.) We fail to see how that proposition helps them make the case that Patterson's conduct would be actionable as trespass.

■

¶ 11.  Rather, we found a case that supports the opposite contention. In *Ladd v. Uecker*, 2010 WI App 28, ¶ 20, 323 Wis. 2d 798, 780 N.W.2d 216, the plaintiff alleged invasion of privacy because the defendants had taken "photographs of her in the stands at baseball parks and disseminated her 'mug shot' and information about [an] injunction and [a] spring training incident." We held that there was no invasion of privacy under WIS. STAT. § 995.50(2) in part because the alleged actions did not involve an invasion of private places and the information distributed was a matter of public record. *Ladd*, 323 Wis. 2d 798, ¶ 20. Similarly, in this case, the only action that was allegedly taken by Patterson was the distribution of fliers containing information that was already available to the public. The fact that the information may have inspired others to make phone calls, honk their horns, and/or write letters, does not mean that *Patterson* invaded the Kellers' private space.

¶ 12.  The Kellers' WIS. STAT. § 995.50(2)(c) claim must also fail. Subsection (2)(c) addresses situations where an individual makes public statements about the private life of another person in a highly offensive way. In order to fall under this subsection, the statements must make information public that was not heretofore available to the public. *See id.* In this case, as we already noted, all of the information that was given was available to the public in one form or another before Patterson distributed the fliers, so it simply cannot be classified as private.[4]

---

[4] The Kellers argue that it was not public record that Michael lived with them or shared their phone number. But his address was available on the sex offender registration website,

■■

¶ 13.   Having disposed of the Kellers' invasion of privacy claim, we move on to their abuse of process claim, which is based on Patterson's complaint and petitions for temporary restraining orders. Our supreme court has explained abuse of process as follows:   "One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby." *Strid v. Converse*, 111 Wis. 2d 418, 426, 331 N.W.2d 350 (1983) (citation omitted). The tort has two elements:   (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process.[5] *Id.* at 427. "The existence of an improper purpose alone is not enough, for this improper purpose must also culminate

and an affidavit and attachments from Patterson's private investigator show that an internet search of "Wanda Keller Wisconsin" or "Allan Keller Wisconsin" both brought up the address listed on the sex offender registration website and the phone number listed in the flier.

The Kellers additionally argue that their relationship to Michael was not a matter of public record. Even if that is true, which we highly doubt that it is, we fail to see how the familial relationship between the Kellers and Michael from the flier constitutes "[p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person." *See* Wis. Stat. § 995.50(2)(c).

[5] In *Brownsell v. Klawitter*, 102 Wis. 2d 108, 115, 306 N.W.2d 41 (1981), the supreme court worded the two elements differently:   (1) "a willful act in the use of process not proper in the regular conduct of the proceedings" and (2) an "ulterior motive." (Citations omitted.) Although the words used are different, the elements remain the same.

in an actual misuse of the process to obtain some ulterior advantage." *Id.* (citation omitted).

¶ 14. The Kellers easily meet the first element. Patterson filed the petitions against the Kellers soon after receiving a letter from their attorney stating that they were planning to file suit against her. Because of the timing of the petitions so close to the Kellers' attorney's letter regarding a possible lawsuit, one reasonable inference is that Patterson allegedly filed the false petitions in an attempt to gain leverage in potential upcoming proceedings and/or an attempt to intimidate the Kellers from taking any action against her. That purpose, if proven true, is clearly one "other than that which the process was designed to accomplish." *See id.*

¶ 15. It is the second element—subsequent misuse of the process—that Patterson argues cannot be met. She bases her argument on the fact that she dismissed her complaint and petitions without serving them. Thus, she contends that the process was never really misused. We disagree. When Patterson went to the courthouse on August 27, 2009, she filed a complaint with allegations that were somewhere between grossly exaggerated and patently false, as evidenced by her own deposition testimony.[6]

¶ 16. If Patterson had stopped with the filing of the complaint and then voluntarily dismissed the lawsuit without doing anything more, she might have prevailed with her argument that she corrected her mistake before an abuse of process occurred. But she took the complaint one step further by petitioning for

---

[6] We already laid out some discrepancies between her allegations and her deposition testimony in the background section. We will not go into more detail here because even Patterson does not argue that she can support her allegations.

temporary restraining orders against Wanda and Greggory based on the allegations in the complaint. The temporary restraining orders were granted and signed by a judge ex parte. So despite the lack of service, Patterson used the court's time and resources. In addition to that, the filing of the petitions and complaint created a public record available on CCAP, which Wanda claims has drastically reduced her business which involves caring for people in their homes. So, that part of the process which was used by Patterson had immediate consequences to the court and to the defendants. She cannot now argue that her voluntary dismissal prior to service negates the misuse of process that had already occurred. The proverbial train left the station when she petitioned for (and obtained) temporary restraining orders based on false allegations.

¶ 17.  Patterson also contends that her actions do not qualify as misuse of process under *Tower Special Facilities, Inc. v. Investment Club, Inc.*, 104 Wis. 2d 221, 311 N.W.2d 225 (Ct. App. 1981). In that case, we stated that the plaintiff's abuse of process claim failed because it did not "allege that the defendants took any 'irregular steps' under the cover of the process *after its issuance.*" *Id.* at 229 (emphasis added). She argues that the Kellers have likewise failed to allege any "irregular steps" she took under cover of process *after* its issuance. We disagree. Even assuming that the law requires Patterson to have misused process after its issuance,[7] she did so here. As we already noted, she did not simply file a

_____

[7] For a view that our supreme court and other authorities have shied away from such a strict interpretation of misuse of process, *see Kaminske v. Wisconsin Central Ltd.*, 102 F. Supp. 2d 1066, 1078–79 (E.D. Wis. 2000).

complaint and petitions for temporary restraining orders; she then stood by them while the court granted those temporary restraining orders. In addition, Patterson's attorney acknowledged at the summary judgment hearing that Patterson had even gone so far as to oppose the Kellers' attempts to have the temporary restraining order actions removed from CCAP. If true, she clearly wanted to have this process work to the Kellers' detriment. As such, this could be classified as an "irregular step." It certainly would belie Patterson's assertion that her actions were of no consequence. That is enough to create a question of fact about misuse of process after its issuance.

## Defamation

¶ 18. Next, we address the Kellers' defamation claim, which, like the abuse of process claim, is based on the false allegations in Patterson's complaint and petitions for temporary restraining orders. The Kellers acknowledge that generally speaking, allegations made in pleadings commencing judicial proceedings are privileged from defamation claims so long as the statements are "pertinent and relevant to the issues." *See Spoehr v. Mittelstadt*, 34 Wis. 2d 653, 658–59, 150 N.W.2d 502 (1967) (citation omitted). But they argue that there should be an exception to the privilege rule for cases like this one, where there is no "legitimate bonafide basis" for the action.

¶ 19. We reject the Kellers' argument. The Kellers' claim that there is no legitimate basis for the lawsuit is based on the fact that the allegations in the complaint and petitions were false. We have specifically explained

that even false statements made in judicial proceedings are privileged. *See Ladd*, 323 Wis. 2d 798, ¶¶ 13, 15. The statements Patterson made in her petitions and complaint, whether true or false, were relevant to the issues she presented therein. Therefore, the privilege applies. *See Spoehr*, 34 Wis. 2d at 658–59.

*Frivolous claims*

¶ 20. Lastly, we address Patterson's cross-claim—that her motion for sanctions against the Kellers and Greggory for filing a frivolous claim were improperly denied.[8] Wisconsin Stat. § 802.05(2)(a)-(c) requires attorneys to certify that each pleading, motion, or other paper filed in court is "not being presented for any improper purpose," is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," and has evidentiary support. *Id.* Patterson contends that the Kellers' complaint, amended complaint, and summary judgment filings were not supported by existing law or a good faith argument for an extension thereof.[9]

[8] Obviously, given our holding, we do not believe that the Kellers' abuse of process claim was frivolous. Our discussion of this issue is therefore limited to whether the Kellers' invasion of privacy and defamation claims were frivolous. *See Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 552, 597 N.W.2d 744 (1999) ("[T]he inclusion of one sufficient and adequately investigated claim does not permit counsel to file unsubstantiated claims as riders.").

[9] In addition to arguing that their claims are not frivolous, the Kellers argue that because Patterson waited until after summary judgment was granted in her favor to file the motion for sanctions, the motion for sanctions was untimely. *See Booth v. American States Ins. Co.*, 199 Wis. 2d 465, 477–78, 544 N.W.2d

584

¶ 21. We apply two different standards of review to allegations that a lawsuit is frivolous: one for determining whether actions are *commenced* frivolously and a second for determining whether actions are *continued* frivolously. *Storms v. Action Wis. Inc.*, 2008 WI 56, ¶ 33, 309 Wis. 2d 704, 750 N.W.2d 739.[10] Our review of the trial court's decision that an action was commenced frivolously is deferential. *Id.*, ¶ 34. Determining what and how much pre-filing investigation was done are questions of fact that will be upheld unless clearly erroneous. *Id.* The determination as to how much investigation should have been done is also a matter within the trial court's discretion. *Id.* (citation omitted). The trial court's discretionary decisions will be sustained so long as the trial court "examined the relevant facts, applied a proper standard of law and,

---

921 (Ct. App. 1996). We do not address that argument because we hold that even assuming the motion was timely, the claim of frivolousness must fail.

[10] *Storms v. Action Wisconsin Inc.*, 2008 WI 56, ¶¶ 33–35, 309 Wis. 2d 704, 750 N.W.2d 739, actually addresses the standards of review for Wis. Stat. § 802.05 (2003–04), which governed sanctions for frivolous pleadings, and Wis. Stat. § 814.025 (2003–04), which governed sanctions for frivolously continued actions. By supreme court order, both of those statutes were repealed and replaced by a new § 802.05 effective July 1, 2005. *See Storms*, 309 Wis. 2d 704, ¶ 4 n.2. Because the new statute applies to all pleadings, motions, and other papers filed with the court, which includes those commencing and continuing a lawsuit, we apply those same standards of review. However, we do note that the standard of review for frivolously continued actions may now be more deferential to the trial court. *See id.*, ¶ 35, n.7. Since we uphold the trial court using the de novo standard of review, we would obviously uphold the trial court using a more deferential standard of review, as well.

using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citations omitted).

■■

¶ 22.  With regard to whether an action was continued frivolously, what an attorney knew or should have known is a question of fact. *Id.*, ¶ 35. Then, whether the facts found by the trial court support a finding of no basis in law or fact is a question of law which we review de novo. *Id.* All doubts regarding whether a claim is frivolous " 'are resolved in favor of the party or attorney' whom it is claimed commenced or continued a frivolous action." *Howell v. Denomie*, 2005 WI 81, ¶ 8, 282 Wis. 2d 130, 698 N.W.2d 621 (citation omitted).

■■

¶ 23.  In this case, after affidavits from the Kellers' attorneys and a hearing on the motion, the trial court found as follows:

> It is axiomatic that the granting of summary judgment is not the equivalent of a finding of a frivolous action. Here, the plaintiffs were confronted with what is in this Court's opinion a highly unusual fact situation . . . . While the court did not agree with the plaintiffs' conclusions, I simply cannot find that the plaintiffs' position was frivolous. *Plaintiffs' counsel thoroughly researched the legal basis for the pleadings and had, in this Court's opinion, a good faith basis to assert the claims they did* based upon their view of the evidence or asserting a good faith extension of current law.

In other words, the trial court found that the Kellers' attorneys had done sufficient investigation of the facts and law before filing the pleadings such that the actions were not frivolous. In so finding, it examined the

relevant evidence, applied the proper legal standard and demonstrated a rational reasoning process—so there was no erroneous exercise of discretion in its decision that the claim was not commenced frivolously. In addition, we see nothing frivolous about the legal arguments the Kellers pursued in their summary judgment arguments, despite our rejection of some of them in this appeal. We therefore uphold the trial court's determination that the claims were not frivolously continued. Because we affirm in the cross-appeal, costs for the cross-appeal may be allowed against Patterson under WIS. STAT. RULE 809.25(1)(a).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded; order affirmed.