# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1501**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV627

IN COURT OF APPEALS
DISTRICT III

---

SCOTT SCHNEIDER,

   PLAINTIFF-APPELLANT,

 V.

INSURANCE MANAGEMENT INC. D/B/A HSG CODEBLUE,

   DEFENDANT,

CODEBLUE LLC, NANCY PUERNER, JOHN PARRIS, ERICA ANN HUDSON AND NICOLE LYNN DARBY,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Eau Claire County: MICHAEL A. SCHUMACHER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Scott Schneider, pro se, appeals from a circuit court order granting the defendants'[1] summary judgment motion and dismissing his defamation claims against them. Schneider argues that there are genuine issues of material fact as to the truth of CodeBlue's allegedly defamatory statements, thereby precluding summary judgment. We conclude that the summary judgment materials establish that the statements made by CodeBlue were substantially true, which Schneider has conceded. We therefore affirm the court's order dismissing Schneider's claims.

## BACKGROUND

¶2    Schneider was employed by CodeBlue from June 2016 through June 2018 in its call center. During his two-year employment with CodeBlue, Schneider was subject to several written disciplinary warnings for attendance, using profanity while on a call, and unprofessional interactions with a coworker, the latter of which is the subject of this appeal. Specifically, his unprofessional conduct involved his interactions with his coworker, Erica Hudson.

¶3    These interactions began on August 5, 2017, when Schneider and Hudson went out for a drink. In his deposition, Schneider admitted that during that evening, he told Hudson "he would love to kiss her but would settle for a

---

[1] The defendants in this case include Insurance Management Inc., (d/b/a HSG Codeblue), CodeBlue, LLC, and individual defendants Erica Hudson, John Parris, Nicole Darby, and Nancy Puerner. For ease of reading, we will refer to the defendants collectively as CodeBlue unless otherwise noted.

hug." Instead, Hudson "gave [Schneider] a disgusted look and refused, stated she would see [Schneider] at work and left." Following that encounter, Schneider sent Hudson multiple messages over the CodeBlue instant messenger system. Schneider admitted that the messages had both a "sexual tone" and a "controlling tone." According to Schneider, he wanted a romantic relationship with Hudson, he was aware that Hudson did not want a romantic relationship, but he was trying to "change her mind."

¶4    CodeBlue discovered the messages on its instant messenger system, and Schneider received a "Final Warning" for violating CodeBlue's "Work Rules and Regulations Policy; Group Two: Intolerable Behaviors."[2]  In his complaint, Schneider "admit[ted] wrongdoing in August" 2017 regarding the instant messenger exchange, and he also admitted that the messages "did communicate frustration and were borderline harassment."

¶5    On June 11, 2018, Schneider and Hudson had an encounter by the elevator in CodeBlue's office building ("the Elevator Incident"). According to the corrective action form, issued on June 19, 2018, and detailing the encounter

---

[2] The "Final Warning" was issued via a corrective action form on September 6, 2017. The form provides details of the type of warning, type of offense, the policy violation, the plan for improvement, and the consequences of further infractions. According to CodeBlue's corrective action form, the violating "Intolerable Behaviors" included "[e]ngaging in improper/indecent behavior[, such as] … [p]ersonal actions of conduct, whether intentional or unintentional, such as insulting or abusing customers, vendors or any associates, and making or publishing false, vicious, threatening, or malicious statements concerning any of the aforementioned parties or the Company" and "[e]ngaging in any form of unwelcome and/or unwarranted verbal or physical deprecation of person, explicit derogatory statements, profanity, and discriminatory remarks made by someone in the workplace that are offensive to the recipient or that cause the recipient discomfort or humiliation and/or interfere with the recipient's job performance." The form also states that "[f]uture occurrences of this type of behavior and/or other [CodeBlue] policy and procedure violations may result in further disciplinary action, up to and including termination of employment."

("June 2018 Corrective Action Form"), "a co-worker filed a harassment complaint against [Schneider] for unwarranted advances," stating that "after [Schneider's] shift was complete he waited near an exit for nearly 30 minutes for her shift to finish so he could approach her." In his operative complaint filed in this action, Schneider admitted that he "was aware" that "it was 9:00 PM and that Ms. Hudson may at any time come down the elevator to [go home from] her shift" and that he "thought ahead in the event this happened." Schneider explained that when Hudson did exit the elevator, she "walked quickly by behind him," and he "ambled through the double doors calling out to Ms. Hudson." Schneider then confronted Hudson to "apologize" for his behavior on social media when he left her a "frustrated message" and "unfriend[ed] her."

¶6    Following the Elevator Incident, Schneider continued to contact Hudson. Schneider admits that he "messaged Ms. Hudson on Facebook with a small paragraph" to reiterate his apology. He then sent Hudson flowers on June 13, 2018, "to reinforce the apology; however, at the time [he] did not identify himself as the person who did so." Schneider did message Hudson on Facebook that night to inform her that he sent the flowers. According to a Facebook message log in the record, between June 14 and June 18, 2018, Schneider messaged Hudson ten times, but Hudson never responded. Schneider also reached out to Hudson on CodeBlue's instant messenger system, but again Hudson did not respond.

¶7    According to Schneider's complaint in this case, he then approached Hudson at their workplace to discuss "the state of their work relationship." Hudson reminded Schneider that she wanted to maintain a professional relationship. Hudson reminded Schneider again via CodeBlue's instant messenger system when he continued to message her, stating, "I am just trying to keep a

4

professional/work relationship." Schneider responded via CodeBlue's instant messenger system on June 19, 2018, with multiple, insistent messages regarding his desire for a different type of relationship.

¶8 Schneider's employment with CodeBlue was terminated on June 19, 2018, due to his conduct toward Hudson and his repeated violations of CodeBlue's "Work Rules and Regulations Policy; Group Two: Intolerable Behaviors."[3] Schneider then filed for unemployment benefits. CodeBlue received a "Discharge Questionnaire" as well as a "UCB-16 Separation Notice" form from the Department of Workforce Development Unemployment Insurance Division ("UI Division"). CodeBlue completed and returned those forms, in addition to providing supplemental documents requested by the UI Division. The supplemental documents included CodeBlue's corrective actions forms stating that Schneider had been discharged for violating work rules and regulations. CodeBlue also provided an unsigned document in response to "questions raised by" the UI Division ("CodeBlue response"). The CodeBlue response stated in part,

---

[3] The complete "Description of Incident" in the June 2018 Corrective Action Form is as follows:

> On 6/15/18 a co-worker filed a harassment complaint against [Schneider] for unwarranted advances. On 6/11/18 after [Schneider's] shift was complete he waited near an exit for nearly 30 minutes for her shift to finish so he could approach her. On 6/13/2018 [h]e sent her flowers anonymously with a note "For all you do." Later that night [Schneider] sent her a lengthy message on Facebook telling her he sent the flowers. She did not respond to the messages. On 6/14/2018 [Schneider] sent her an Instant Message via Company Computer saying "Hi—What did you have for lunch?" When she did not respond he sent her another message about 2 hours later saying "Look—I wont bite—I just sent you flowers."

5

> On the incident on 6/11/18 [Schneider] first attempted to talk to [Hudson] on the call floor while she was working. She dismissed his attempts by telling him she was busy and was unable to talk. Later that night [Schneider] waited for her on the first floor between the elevator and the stairway. [Hudson] wouldn't have been able to see him until she reached the first floor by elevator or stairs. At that point he began following her out of the building and asking her if she was trying to avoid him. He was unable to walk to the parking lot with her because she walks much quicker.

CodeBlue went on to explain that Hudson "was feeling threatened because of how angry [Schneider] got with her the last time she turned down his advances in August 2017, and because [Schneider] waited outside the elevator for her to be finished with her shift." According to CodeBlue, "[a]fter this incident [it] took precautions and had [Hudson] escorted to the parking lot after her shifts were finished."

¶9    On July 19, 2018, the UI Division denied Schneider unemployment benefits, finding that he "was discharged for misconduct connected with his employment." On August 22, 2018, CodeBlue received a letter from the Department of Workforce Development Equal Rights Division ("ERD"), relating to a complaint that Schneider filed against CodeBlue in which Schneider stated that he was discriminated against based on his disability—chronic fatigue syndrome. CodeBlue responded to the ERD's request for information by forwarding the records discussed above.

¶10    Schneider filed the complaint at issue in this appeal on December 13, 2019.[4] The complaint alleged that CodeBlue had engaged in

---

[4] Schneider subsequently filed four amended summons and complaints in quick succession between December 13 and December 20, 2019. CodeBlue, however, was not properly served with any of those pleadings. Schneider filed his fifth amended summons and complaint on March 2, 2020, and CodeBlue filed its admission of service the same day.

6

"Defamation of Character in the form of Libel Per Se." Schneider had also previously filed a separate lawsuit against the individual defendants in this case for defamation, and on August 17, 2020, he filed a motion for permissive joinder of claims. On October 26, 2020, the circuit court entered an order consolidating the actions.

¶11 On June 1, 2021, CodeBlue filed a motion for summary judgment, seeking dismissal of all Schneider's defamation claims. In support, CodeBlue argued the following:

> (1) the defamation claims are not properly pled with particularity, (2) [Schneider] lacks sufficient evidence to maintain a defamation claim against some or all of the Defendants, (3) the alleged defamatory statements are true, and (4) even if they were not true, the statements were legally privileged such that no liability for defamation can lie against any of the Defendants.

Schneider opposed the motion. After a hearing, the circuit court granted CodeBlue's motion for summary judgment by oral pronouncement and by written order on August 23, 2021. Schneider appeals.

## DISCUSSION

¶12 On appeal, Schneider argues that the circuit court erred in granting CodeBlue's motion for summary judgment dismissing his defamation claims against all of the defendants. Specifically, Schneider argues that the court "did not follow Summary Judgment Methodology by neglecting to take any legal arguments and inferences in favor of the non-moving party." In essence, however, Schneider argues that there are material facts in dispute, precluding summary judgment. CodeBlue counters that while Schneider argues that there are factual disputes, there are no disputes as to the *material* facts. Instead, CodeBlue asserts

that Schneider has admitted to all material facts concerning his behavior. We agree, and for the reasons that follow, we affirm the court's grant of summary judgment in favor of CodeBlue.[5]

¶13 Our review of a circuit court's summary judgment decision is de novo, applying the same methodology as the circuit court. *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. "The methodology governing summary judgment is well-established and we need not repeat it in its entirety." *Progressive N. Ins. Co. v. Jacobson*, 2011 WI App 140, ¶7, 337 Wis. 2d 533, 804 N.W.2d 838. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[5] As a threshold matter, CodeBlue argues that we should dismiss Schneider's appeal for his failure to follow numerous rules of appellate procedure. *See* WIS. STAT. RULE 809.19(1) (2019-20). Schneider is a pro se litigant; however, we generally hold pro se litigants in civil matters to the same appellate rules as attorneys. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451-52, 480 N.W.2d 16 (1992). We agree that Schneider's brief fails to comply with these rules, specifically that an appellant's brief must contain appropriate citations to the record. *See* RULE 809.19(1)(d), (e) (2019-20). Further, Schneider fails to fully develop clear arguments with citation to legal authority.

Although we are not persuaded that dismissal is warranted in this case, we admonish Schneider that future violations of our appellate rules may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2019-20). We will address Schneider's arguments as best we can discern them, but we have no duty to address undeveloped arguments, to develop arguments on a party's behalf, or to search the record for evidence to support Schneider's arguments. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82; *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

material fact and that the moving party is entitled to a judgment as a matter of law."[6] WIS. STAT. § 802.08(2).

¶14     Schneider asserts claims against CodeBlue for defamation "in the form of Slander Per Se and Libel Per Se."  A common law defamation claim requires: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her." *Laughland v. Beckett*, 2015 WI App 70, ¶22, 365 Wis. 2d 148, 870 N.W.2d 466 (quoting *Ladd v. Uecker*, 2010 WI App 28, ¶8, 323 Wis. 2d 798, 780 N.W.2d 216); WIS JI—CIVIL 2500 (2016).  A claim for defamation can be based on either libel or slander.  *Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 457, 113 N.W.2d 135 (1962).  Slander is "the publication of defamatory matter by spoken words," whereas libel is "defamation 'by written or printed words.'"  *Bauer v. Murphy*, 191 Wis. 2d 517, 524, 530 N.W.2d 1 (Ct. App. 1995) (citation omitted).

¶15     On review, our first step is to determine if the matter complained of is defamatory.  *Ladd*, 323 Wis. 2d 798, ¶8.  If so, we then consider defenses to the

---

[6] On appeal, Schneider failed to provide us with a transcript of the circuit court's oral ruling in this case.  As the appellant, it is Schneider's responsibility to provide this court with a record that is sufficient to review the issue on appeal.  *See Hometown Bank v. Acuity Ins.*, 2008 WI App 48, ¶6 n.5, 308 Wis. 2d 503, 748 N.W.2d 203 ("The burden is on [appellant] to provide a record sufficient to review its appellate issues."); *State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.'" (citation omitted)).  Although this oversight would typically require us to assume that the missing information supported the court's ruling, our review of the court's summary judgment decision is de novo.

claim. *Id.* "Truth is a complete defense." *Id.* "If the challenged statements as a whole are not capable of a false and defamatory meaning, or are substantially true, a [defamation] action will fail." *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534-35, 563 N.W.2d 472 (1997).

¶16     We first note that Schneider's arguments on appeal regarding the exact basis for his defamation claim are difficult to discern.[7] CodeBlue argues that "Schneider has not been entirely clear on what statements he is alleging are the defamatory statements." *See* WIS. STAT. § 802.03(6) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally."); *Ashker v. Aurora Med. Grp., Inc.*, 2013 WI App 143, ¶11, 352 Wis. 2d 193, 841 N.W.2d 297 ("The general allegation in [the] complaint that Aurora made false statements does not meet the statutory requirement that 'the particular words complained of shall be set forth in the complaint' for a defamation claim."). Further, Schneider has also failed to specify which defendants he asserts committed libel and which committed slander.

¶17     Schneider claims that CodeBlue and the individual defendants "were party to false allegations that Schneider: (1) Committed the act of stalking … and

---

[7] We note, as CodeBlue does, that this is not a case for wrongful discharge; the claim is for defamation. Despite this fact, Schneider spends a great deal of his briefing arguing that he was wrongfully terminated.

(2) An allegation of harassment."[8]  In his complaint, Schneider alleges that CodeBlue committed defamation

> by stating [that] on June 11, 2018[,] [Schneider] tried to talk to Ms. Hudson on the call floor and after Ms. Hudson told him she was busy, [Schneider] later waited by the elevator for 30 mins after his shift was done for Ms. Hudson to come down the elevator so he could confront her, [Schneider] then ended up following Ms. Hudson out of the building when she did not want to talk, asking her if she was trying to avoid him.  Ms. Hudson was able to get away because she could walk much more quickly to the parking lot.  [CodeBlue] further alleged that [Schneider] sent Ms. Hudson flowers the next day Tuesday, June 12 and Skyped Ms. Hudson on Thursday, June 14, 2019.  [CodeBlue] alleges Ms. Hudson didn't respond to [Schneider's] inquiries in regard to each incident either on Skype or on Facebook.  Ms. Hudson filed harassment charges against [Schneider] on Friday, June 15, 2018[,] for the above alleged set of occurrences.

¶18    Thus, it appears that Schneider alleges that the defamatory statements were made by Hudson when she informed CodeBlue of the Elevator Incident, the flowers, and the subsequent social media and the CodeBlue instant messenger communications.  CodeBlue and the remaining individual defendants then republished those statements in the June 2018 Corrective Action Form and in the CodeBlue response, which were then sent to the UI Division and to the ERD. For purposes of this appeal, we will assume without deciding that those statements are capable of a defamatory meaning.

---

[8] Schneider himself appears to have classified his behavior as "stalking," as our review of the record reveals that CodeBlue never used the term "stalking" to define Schneider's actions, and CodeBlue concurs with that conclusion.  The June 2018 Corrective Action Form merely states that Schneider "waited near an exit for nearly 30 minutes for her shift to finish so he could approach her."  The CodeBlue response states that "[l]ater that night [Schneider] waited for her on the first floor between the elevator and the stairway."  The June 2018 Corrective Action Form does, however, reference "harassment," stating that "a co-worker filed a harassment complaint against [Schneider] for unwarranted advances."

11

¶19    Under the circumstances, we agree that the circuit court properly granted summary judgment in favor of CodeBlue.[9]  As noted previously, truth of a statement is a defense to a defamation claim, and, more importantly for our purposes, "it is enough if the statement is 'substantially true.'"  *DeMiceli v. Klieger*, 58 Wis. 2d 359, 363, 206 N.W.2d 184 (1973) (citation omitted).  "It is not necessary to prove the literal truth of the precise statement made.  Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance."  *Lathan v. Journal Co.*, 30 Wis. 2d 146, 158, 140 N.W.2d 417 (1966) (citation omitted).

---

[9] CodeBlue also singles out two individual defendants—Nicole Darby and John Parris—arguing that Schneider has failed to state a claim against these individual defendants.  As to Darby, CodeBlue explained that the defamation claim against Darby must be dismissed, as Schneider has presented no evidence that she engaged in defamation.  Schneider does not indicate what statements Darby allegedly made, only noting in his original complaint against the individual defendants that she "is the official who called [Schneider] and told him that he was fired" and that she was "instrumental in the discussion."  Later, in his brief in opposition to CodeBlue's motion for summary judgment, Schneider argued that Darby was the one who "filled out and sanctioned" "the Discharge Questionnaire and Separation Notice" that was sent to the UI Division that included "the fabricated stalking incident in June 2018 [that was] the reason for his termination and is the only reason for his termination."  CodeBlue, however, explains that "Jody Glampe was the person to sign the Discharge Questionnaire, and no one signed the final Corrective Action Form" or the CodeBlue response.  Schneider provided no evidence to support his claim that Darby filled out the forms, and he fails to respond to CodeBlue's claims in his reply brief.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not disputed may be deemed admitted).  Again, this case is not a wrongful termination case; general allegations that a party was somehow involved in Schneider's termination alone have no bearing on the elements of a defamation claim.  We agree that Schneider's claim against Darby was properly dismissed.

As for Parris, Schneider's original complaint against the individual defendants alleged that Parris defamed him because Parris was the "HR official who took Ms. Hudson's Complaint and Statements" and because Parris "first reported the allegations of harassment to the [UI Division]."  Schneider, however, has also failed to provide evidence to support these allegations.  In fact, in his deposition, when asked, "What libelous statement are you attributing to John Parris?"  Schneider responded, "I don't have direct evidence of him being involved because there isn't anything that shows me any memos, any kind of emails, nothing …."  Again, Schneider failed to respond to CodeBlue's argument on this point in his reply brief.  *See Charolais*, 90 Wis. 2d at 109.  For these reasons, we also agree that Schneider's claim against Parris was properly dismissed.

12

¶20    Here, we conclude that based on the record before us, the statements made by Hudson and republished in the June 2018 Corrective Action Form and CodeBlue response are substantially true, and to the extent there are disputed issues of fact, those facts are not material. As noted previously, Schneider agrees that the Elevator Incident took place. However, he appears to dispute three facts related to the Elevator Incident: (1) the date; (2) whether he followed Hudson out the door; and (3) whether he was actually waiting for Hudson for thirty minutes, as he claims this amount of time would be impossible due to his chronic fatigue syndrome.

¶21    First, Schneider claims that the Elevator Incident actually occurred on June 4, 2018, rather than June 11, 2018. *When* the Elevator Incident occurred, however, is immaterial to the dispute in this case. Based on the issue before us, all that matters is whether the incident in fact occurred, and Schneider admits that it did.

¶22    Second, Schneider states that the circuit court found that he "[f]ollowed Ms. Hudson out the door," but he argues that "he did not follow her out of the building in any manner[,] shape or form." Neither the June 2018 Corrective Action Form nor the court stated that Schneider followed Hudson outside of the building, and the CodeBlue response merely stated that Schneider "*began following her* out of the building and asking her if she was trying to avoid him." As noted, however, Schneider admitted in his complaint that he "ambled through the double doors calling out to Ms. Hudson," meaning that he followed her out of *a set of doors* and he did so when Hudson was attempting to exit the building for the evening. Thus, this fact is substantially true.

¶23 Finally, Schneider argues that due to his chronic fatigue syndrome, he "did not have the ability to stand at an elevator exit for 30 minutes lying in wait for Ms. Hudson." Again, Schneider admitted that he knew "that Ms. Hudson may at any time come down the elevator to [go home from] her shift" and that he "thought ahead in the event this happened." The exact amount of time that Schneider waited or did not wait is also immaterial to this dispute. Instead, Schneider admitted to the substantial truth of the material facts: that an encounter occurred, that Schneider thought ahead regarding the possibility of this encounter, that he followed Hudson and called out to her, and that he spoke to Hudson regarding his previous behavior.

¶24 The remainder of the statements in the June 2018 Corrective Action Form referenced Schneider sending Hudson flowers and messaging Hudson on social media as well as the CodeBlue instant messenger system. Based on the evidence in the record, including the communication logs and Schneider's deposition, these statements are all true.

¶25 In terms of whether these events are properly characterized as "harassment"[10] as alleged in the June 2018 Corrective Action Form, we agree with CodeBlue that the context of all Schneider's and Hudson's interactions renders that statement substantially true. Schneider admitted that his behavior in August 2017 was inappropriate and that it was "borderline harassment." Then in

---

[10] Harassment is generally defined as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in to that person and serves no legitimate purpose." *Harassment*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also* WIS. STAT. § 813.125(1)(am)4.b. ("'Harassment' means … [e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose.").

14

June 2018, he engaged in the Elevator Incident, which CodeBlue calls "premeditated" and which was, at the very least, something he thought about beforehand. Following that incident, Schneider sent Hudson flowers and approached her in the workplace to discuss "the state of their work relationship."

¶26 After Hudson repeatedly informed Schneider of her desire to keep their relationship professional, and despite Hudson's lack of response, Schneider continued to message her via two communication mediums. As CodeBlue explained, "Schneider's behavior adds up to 'unwarranted advances' as Hudson stated in her harassment complaint," and Hudson felt threatened as a result. In reply, Schneider argues only that these interactions were nothing more than an "office romance" gone wrong, that CodeBlue is "paint[ing] Schneider as the dark villain of the CodeBlue call center," and that the "Me-Too movement" impacted these allegations. None of Schneider's arguments dispute the fact that these repeated, unwanted interactions with Hudson occurred.

¶27 Therefore, for the reasons stated above, we conclude that the statements made by Hudson and republished by CodeBlue and its employees in the June 2018 Corrective Action Form and CodeBlue response were substantially true. Accordingly, we affirm the circuit court's order granting summary judgment in favor of CodeBlue.[11]

---

[11] In the alternative, CodeBlue argues that it is entitled to judgment as a matter of law because the communication in this case is privileged, in addition to various other defenses to Schneider's claims. Wisconsin law recognizes certain privileges that apply to defamatory statements and protect the communicator from liability. *See Vultaggio v. Yasko*, 215 Wis. 2d 326, 330-31, 572 N.W.2d 450 (1998). Because we have determined that the statements in this case were substantially true, and as that issue is dispositive, we do not address privilege or any other defenses. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.